LAURA M. EATON *v.* ALONZO E. EATON.

*Jeremiah J. Doyle, Paul J. Doyle* and *John J. O'Reilly, Jr.* (Mr. O'Reilly orally), for the libelant.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the libelee.

ALLEN, C. J. The trial court's construction of the decree sought to be vacated or modified is erroneous. Entered conformably to a stipulation for it, the decree was nevertheless "the conclusion of the court upon all the evidence." *Wallace* v. *Wallace*, 74 N. H. 256, 260. The decree, although based on the stipulation, did not rest upon it, "but on the decision of the judicial questions raised" by its presentation. *Ib*. The decree took into account all matters to which it pertained, including those embodied in the stipulation. The stipulation was not an agreement providing for adjustment between the parties of the matters to which it related, but was an agreement for a decree adopting its terms. The decree is therefore to be considered from the court's attitude and position, influenced by the stipulation.

As presented to the court, the stipulation was intended, so far as it might, to provide for a decree which would determine and fix all the incidental rights and obligations arising from the divorce. The parties each had competent counsel, without doubt aware of the law relating to alimony as provision for support. It would be unreasonable to find that the stipulation did not allow for such provision, as well as the other matters admitted to be adjusted by the decree adopting it. It follows that provision for the libelant's support, the conveyance of her interest in real estate, and the settlement of the alienation suit were all subjects presented to the court for consideration. The surrounding facts appearing in the record, reënforce this conclusion.

So far as the evidence discloses, the alienation suit had no merit, and only a nuisance value in any effect upon the libelee. The real estate in which the libelant's half interest was conveyed to the libelee

was bought in 1924 for $3500, the libelant paying $2000 towards the price. At the time of the divorce in 1936 it was subject to a mortgage of $2,000, and according to the only testimony of its value, it was then worth $1800. There was no evidence that the libelee's net worth at the time of the divorce was over $1,500, a figure which included the libelant's real estate interest. Taking into account the facts of the hostility between the parties and of their representation by counsel learned in the law, an inference that the libelee was to pay the libelant an inordinate price for her property rights or that she made no claim for support, may not fairly be drawn. Reason does not commend a finding that the matter of support was over-looked, ignored, or considered of no consequence. No sensible conclusion can be drawn that the claim for support did not receive allowance in the amount agreed upon and fixed by the decree, which was intended to adjust by one sweeping totality all elements of contention. Other considerations strengthen the conclusion. The weekly payments to be made the libelant in discharge of the obligation import provision for support. It was hardly contemplated that if either party died during the period for them, the obligation would inure in its full undischarged extent to the benefit of the libelant's estate. Such a result would logically follow, however, if the decree excluded provision for support.

Moreover, if provision for support was excluded, the settlement as only a purchase and sale transaction would be a binding contract beyond the court's power to revise, and not calling for a judicial order for its performance. But the decree, adopting the stipulation and ordering its performance, necessarily, by force of the statute (P. L., c. 287, s. 12) reserved authority to revise, thus indicating the purpose of the parties to submit the issue of support to the court. In the view that provision for support was not included in the decree, the libelant would have the right to petition for an order of support at any time on the premise that the decree in force, not providing for it, is not to be considered as having any bearing on it.

Furthermore, the libelant had a claim for support. If, as the effect of her position, she waived it, her waiver was an item reflected in the amount to be paid her. But some price for the waiver is in reality a price paid for what was waived. The result is that the decree included and directed some provision for support.

The libelant married again about two months after the divorce, and the court was of the opinion that this was an insufficient reason for the petition. It was a discretionary conclusion in the nature of

a finding, but as it was based on the erroneous construction of the decree in the divorce libel, and on another erroneous position, herein to be discussed, it may not be sustained.

The effect upon alimony by a libelant's new marriage has been a subject of much judicial consideration. Many cases are cited in annotations in 30 A. L. R. 81; 64 A. L. R. 1273, and 112 A. L. R. 246. The question has not been hitherto directly presented to this court. While authority elsewhere is not uniform, its general weight supports the rule that while the new marriage does not unqualifiedly defeat the right to further alimony, the right is terminated in the absence of circumstances warranting its continuance either unchanged or in reduction. The disagreement is found in the character and kind of circumstances which are held to make out a case of sufficient equity for further payments.

The rule prevailing here is held to be that when the libelant has no care and custody of minor children, her new marriage is ground entitling the libelee to relief from any further payments, unless she can show extraordinary circumstances or a special situation making it clearly and definitely inequitable for the alimony to cease. The special exceptions are not readily defined or enumerated, and they are to be passed upon only as issue arising upon them is presented in the particular facts and features of a given case. No more is now decided than that a lower scale of support in the new marriage is an insufficient reason for the continued payment of any part of the alimony.

In *Robertson* v. *Brewer*, 88 N. H. 455, it was held that the obligation to pay alimony ceases upon the death of the libelee, for the reason that the divorced wife ought not to enjoy greater rights than she had while the marital status existed. Giving the reasoning full scope, it follows that her new marriage, bestowing upon her the right of support from a new source, terminates her right to support from the libelee. When the support of children is not a consideration, a legal obligation to support another man's wife is at least anomalous. The libelee's subsequent marriage is not a release, as it is his voluntary act, and he is rightly estopped from making claim for relief on that ground alone. It is inequitable for him to escape the consequences of the libelant's cause for divorce on the ground of assuming a new duty of support, although a change in his ability to support may invite attention and be taken into account. Alimony to the libelant remains due because support continues to be due her. But she ought not to have two supports at the same time. Her new marriage is her

voluntary entrance into a new status changing her former one, and the incidents of it follow. Fairly, she has elected to give up the benefits of her unmarried state for those of her new marriage.

More is involved in marriage than support, and the argument in some cases that if the support furnished by the new marriage is less in its supply of material benefit and comfort than the support furnished by the alimony, the latter should continue to the extent of the reduction, takes a narrow outlook and invites obnoxious intrusiveness into the privacy of domestic life. Contrasts reflecting on the second husband's ability to support do not tend to promote the stability of the new marriage. And the point sometimes taken that if the new marriage furnishes a lower scale of support and is a complete abandonment of alimony, the libelant is under a penalty of moral restraint in marrying again, is not thought worthy of judicial adoption. If not more theoretical than practical, it assumes that divorced women marry again for material reasons and uninfluenced by sentiment. Public policy, social morals, private decencies, and the legal conceptions of the institution of marriage all unite in insistent demand that the libelant's new marriage be held to constitute her abandonment of the right to further payments of alimony from her former husband.

As has been said, exceptional circumstances may create an equity in special cases for continuance of the alimony or some part of it. But none appear here. In some cases in which it appeared that the libelee was aware of the libelant's purpose to marry again when the alimony was decreed, relief from paying alimony after the new marriage has not been granted. That feature is missing here. The case is barren of any evidence to show that the stipulation for the decree was made in any contemplation of the parties that the libelant might marry again. Although the new marriage took place soon after the divorce, the decree is not to be construed as based upon any judicial allowance for it. It was not a matter taken into account.

Unless the decree for alimony expressly provides for the cessation of payments in the event of a new marriage of the libelant, its force continues until it is modified. This is the general understanding of its proper construction. While the libelant's new marriage entitles the libelee to modification of the decree, yet until it is modified, it remains in effect with no implied condition that it is in force only while the libelant remains unmarried. The libelee may not disobey the order of the decree. His right is to obtain judicial relief from further payments, and not to cease payments without the relief.

From the foregoing it follows that the libelant's new marriage is a required reason for revising the decree for weekly payments. The part of the entire amount remaining unpaid which is attributable to support should be found, and the libelee relieved from further payment of it. Whether the plan of the decree for weekly payments should be revised in shortening the period for them as well as in reduction of their amount, even to the extent of requiring the amount found remaining due after eliminating the part attributable to support to be forthwith payable, is an issue for the trial court's determination. The plan of the decree may be found so far disintegrated by the reduction to be ascertained that changes in time as well as in amount of payment may be demanded. In respect to payments made since the libelant's new marriage, allowance for the part of them representing support should be made (*Mullin* v. *Mullin*, 60 N. H. 16), in the absence of equitable reasons denying the allowance. Among possible reasons for denial it might be found that the libelee has not been diligent in instituting and prosecuting his petition, and that restitution, even although made by crediting it, would work undue hardship on the libelant.

By reason of the views taken, occasion to pass upon other exceptions fails.

There must be a further hearing for modification of the decree in the divorce libel by revision of the decree in this case in accordance with the rules and principles herein announced.

*Case discharged.*

BRANCH, J., was absent: the others concurred.